UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| JENNIFER L. KELLER, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-00104-TWP-MJD |
| CAROLYN W. COLVIN Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Jennifer Keller requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **REVERSED AND REMANDED**.

## I. Procedural History

Keller filed an application for DIB and SSI on February 11, 2010, alleging a disability onset date of May 15, 2009. Keller's applications were denied initially on May 11, 2010 and upon reconsideration on July 27, 2010. Keller requested a hearing which was held on August 3, 2011 before Administrative Law Judge Gregory Hamel ("ALJ"). The ALJ denied Keller's applications on October 19, 2011. The Appeals Council denied Keller's request for review on November 7, 2012, making the ALJ's decision the final decision for purposes of judicial review. Plaintiff filed her Complaint with this Court on January 16, 2013.

## II. Factual Background and Medical History

Jennifer Keller was 38 years old on the alleged onset date of disability. She has past relevant work experience as an office manager and payroll clerk and stopped working due to migraine headaches.

Keller was referred to neurologist Caryn Vogel, M.D. in October 2007 by her primary care physician Lisa Bledsoe, M.D. for treatment regarding her migraine headaches. At this initial examination, Dr. Vogel conducted a neurological examination during which Dr. Vogel found that Keller was able to carry on a complicated conversation with intact concentration, attention, speech and recall and that Keller had a relatively normal exam. Dr. Vogel also determined that there was no secondary cause for the headaches based on normal brain imaging and normal examination.

Keller continued to report to Drs. Vogel and Bledsoe regularly for complaints of severe migraines. Keller was started on many different medication regimens through 2010, none of which offered Keller much relief.

In February 2008, Keller reported getting a severe migraine about once every two weeks. Keller indicated that her headaches became worse with changes in the weather and can be associated with nausea and light and sound sensitivity. Keller was hospitalized in March 2008 for severe intractable headaches. She reported that she has some sort of headache every day which can be associated with light and sound sensitivity and nausea. Dr. Vogel expressed concern that her medication may be playing a role, if not exacerbating her migraines. In April 2008, Dr. Vogel concluded that there was definitely a component of medication overuse headache.[1]

---

[1] "Medication overuse headache" is also known as rebound headaches, or headaches that keep coming back. U.S. National Library of Medicine, National Institutes of Health,

In January 2009, Keller reported having some sort of headache constantly which can be so severe that she is unable to function due to the pain and light sensitivity. On examination, Dr. Vogel reported that Keller was able to carry on a complicated conversation. In March 2009, Keller reported that she was doing better with prescribed medication and Botox injections. Keller also described having visual auras of flashing moving lights.

After an examination in June 2009, Dr. Vogel found in her recommendations that she did not believe Keller was capable of working. Dr. Vogel also reiterated this in a letter to Keller's insurance company for which Keller had applied for disability benefits. [R. at 237][2] In July 2009, Dr. Vogel wrote another letter to Keller's insurance company opining that Keller could not sit for long periods of time, could not concentrate, and was unable to look at a computer screen. Dr. Vogel again reiterated that she did not believe that Keller would ever be able to return to work.

Keller was seen by Dr. Vogel in September 2009 for follow up on intractable migraine headaches, multiple medication failures, and possible medication overuse syndrome. On examination in September 2009, Dr. Vogel reported that Keller was able to carry on a complicated conversation with intact concentration and speech. Keller continued to report that she had some sort of headache every day. Vicodin controlled the headaches, but Keller indicated that it made her excessively tired. Dr. Vogel's impression was that Keller had intractable headaches with multiple medication failures.

In April 2010, state agency physician M. Ruiz, M.D. completed a Physical Residual Functional Capacity Assessment. Dr. Ruiz did not examine Keller. Dr. Ruiz opined that Keller did not have any exertional, postural, manipulative, visual, or communicative limitations.

---

www.nlm.nih.gov/medlineplus/ency/article/003041.htm (last visited Feb. 13, 2014). "Patients who take pain medication more than 3 days a week on a regular basis can develop this type of headache."

[2] Keller was denied for disability benefits by her insurance company in October 2009 for lack of clinically supportive documentation. [R. at 394-96.]

However, Dr. Ruiz opined that Keller had environmental limitations and recommended that Keller avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards including machinery and heights as these may exacerbate Keller's headaches. Dr. Ruiz further opined that Keller's impairment did not meet or medically equal a listing. In making this finding Dr. Ruiz noted that Keller had normal exams and there was a concern for medication overuse.

Dr. Ruiz wrote a follow up case analysis in May 2010 as additional medical evidence was received and there was a question as to whether Keller's migraine headaches were severe enough to meet the intention of Listing 11.03 of the Listing of Impairments. Dr. Ruiz indicated that his prior assessment was unchanged finding that the medical record did not support the alleged severity of symptoms and that Keller made no mention of migraines to her primary care physician Dr. Bledsoe at recent appointments despite the fact that Keller alleged severe migraines five days a week. Dr. Ruiz's opinion was affirmed by state agency physician J. Sands, M.D. in July 2010.

Keller followed up with Dr. Vogel in June 2010 for intractable daily headaches, migraines, and multiple medication failures. Dr. Vogel again reported on examination that Keller was able to carry on a complicated conversation with intact concentration and speech. Dr. Vogel's impression was that Keller had intractable daily headaches with multiple medication failures and a history of medication overuse. Dr. Vogel again indicated that the medication overuse might be playing a role in Keller's headaches.

In August 2011, Dr. Vogel completed a Headaches Medical Source Statement. In the statement, Dr. Vogel indicated that Keller had severe migraine headaches associated with nausea, vomiting, phonophobia, photophobia, throbbing pain, mental confusion, inability to

4

concentrate, mood changes, malaise, pain worse with activity, and causes avoidance of activity. Dr. Vogel indicated that Keller's headaches were triggered by bright lights, hunger, lack of sleep, menstruation, stress, and weather changes.[3] When asked what makes Keller's headache's worse, Dr. Vogel indicated that moving around and noise make them worse.[4] It was Dr. Vogel's opinion that Keller was incapable of even low stress work and Keller would likely have to miss more than four days of work per month due to her headaches.

### III. <u>Applicable Standard</u>

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[5] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity ("SGA") she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. §

---

[3] Dr. Vogel did not check the box for "noise" as a trigger of Keller's headaches. [R. at 433]
[4] Dr. Vogel did not check the box for "bright lights."
[5] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

5

404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt.404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.   The ALJ's Decision

The ALJ first determined that Keller met the insured status requirements of the Act through December 31, 2014. Applying the five-step analysis, the ALJ found at step one that

6

Keller had not engaged in substantial gainful activity since the alleged onset date of May 15, 2009. At step two, the ALJ found that Keller had the following severe impairment: migraine headaches.

At step three, the ALJ determined that Keller did not have an impairment or combination of impairments that met or medically equaled on the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Keller had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1657(b) and 416.967(b). The ALJ added that Keller must avoid concentrated exposure to extreme cold, heat, wetness, humidity, noise, vibration, fumes, and hazards.

At step four, the ALJ determined that Keller is cable of performing her past relevant work as an office manager and chief payroll clerk. The ALJ also found that there were other jobs that existed in the national economy that Keller could perform considering her age, education, work experience, and RFC. Therefore, the ALJ determined that Keller was not disabled.

## V.     Discussion

Keller raises five arguments on review: 1) Keller's migraine headaches are medically equivalent to Listing 11.03 of the Listing of Impairments; 2) the ALJ's RFC assessment is not based on substantial evidence; 3) the ALJ failed to accord adequate weight to Keller's treating physician Dr. Vogel; 4) the ALJ's decision to accord "limited weight" to the lay opinions are not supported by substantial evidence; and 5) the ALJ failed to consider Keller's persistent efforts to obtain pain relief in evaluating Keller's credibility as set forth in SSR 96-7p.

7

A. Step Three

Keller first argues that this Court should award benefits to Keller, or at least remand, because Keller's migraine headaches are medically equivalent to Listing 11.03. State agency physician Dr. Ruiz, who provided the only medical opinion on the issue of medical equivalency, opined in April 2009 that Keller's impairment did not meet or equal a listing. [R. at 326.] In May 2009, after additional evidence was received and a question was raised specifically addressing Listing 11.03, Dr. Ruiz maintained that Keller's impairment did not meet Listing 11.03. [R. at 372.] In his discussion at step three, the ALJ's only remarks was that "[t]here is no specific listing for migraine headaches and the claimant's impairment is not associated with findings listed in Section 11.00 (neurological system) or elsewhere in Appendix." [R. at 16.]

Keller asks this Court to reverse on the grounds that the ALJ's decision does not take into account the Program Operations Manual System ("POMS")[6] which recognizes that migraines, though unlisted, may be medically equivalent to Listing 11.03. The POMS provides examples of rationales for medical equivalence determinations and lists migraine headaches as an example of an unlisted impairment that may be medically equivalent. POMS § DI 24505.015, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424505015 (last visited Feb. 14, 2014). The example states:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her [activities of daily living]. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, non-convulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most

---

[6] According to the Official Website of the U.S. Social Security Administration, "[t]he POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits." Social Security Administration, https://secure.ssa.gov/poms nsf/home!readform (last visited Feb. 13, 2014).

closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

POMS § DI 24505.015. With the exception of "alteration of awareness," the record indicates that Keller has experienced all of these symptoms at one time or another. The ALJ acknowledged that Keller saw her treating neurologist, Dr. Vogel, regularly. [R. at 18, n. 2]. Keller has also experienced symptoms of aura [R. at 235], intense headaches with throbbing and severe pain, nausea [R. at 250, 254] and photophobia[7] [R. at 239, 250, 254, 432]. The record also indicates that Keller must lie down in a dark and quiet room for relief. [R. at 17 (Keller lies down all day with an eye mask to block light), 433]. Her headaches occur at least twice a week and last anywhere from 4 to 72 hours. [R. at 17, 231, 233, 239, 432]. Keller also takes medication as prescribed by her doctor, but there has been concern of medication overuse. [R. at 17, 248, 372, 377.]

The Commissioner did not dispute that the facts are similar to the POMS, only that Plaintiff did not state which facts apply. The Commissioner made no reference to the record to distinguish the circumstances of this case. The Commissioner's only response to the POMS argument is that "this POMS [wasn't] effective until January 15, 2013, well after the ALJ's decision. . . . Thus assuming that it even applies to the facts here, the ALJ would have had no occasion to apply the POMS provision in his October 2011 decision." [Dkt. 15 at 4-5.] The Commissioner's brief cites no evidence in support of this claim. To the contrary, in her reply brief, Keller attached an exhibit of the POMS indicating that its effective date was April 4, 2011, before the ALJ rendered his decision. [Dkt. 16-1.] As the POMS was in effect prior to the time of the ALJ's decision, the Commissioner's argument fails.

---

[7] Also known as light sensitivity. U.S. National Library of Medicine, National Institutes of Health, www nlm nih.gov/medlineplus/ency/article/003041.htm (last visited Feb. 13, 2014).

9

The Court declines to award benefits in this case as requested by Plaintiff because the Seventh Circuit has ruled that the POMS "has no legal force." *Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989). However, the case is worth remanding for further consideration of the POMS. While the POMS may have no legal force, that does not mean that it does not have to be considered by the ALJ. *See Wash. State Dept. of Social and Health Svcs. v. Keffeler*, 537 U.S. 371, 385 (2003) (finding that the POMS serve as guidance in interpreting the Social Security's own language in absence of clarity. "While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect . . ."); *Cannon v. Apfel*, 213 F.3d 970 (7th Cir. 2000) (citing to the POMS to show that the Commissioner complied with its own procedures and finding that "although the SSA has not implemented regulations concerning this statute, we nevertheless owe SSA's interpretation of this statute respectful consideration.") (internal quotations omitted); *Rios v. Astrue*, No. 09 C 7348, 2010 WL 4736485, *5, n. 2 (N.D. Ill. Nov. 15, 2010) (recognizing that the Commissioner cited to the POMS as relevant authority). This Court has also found that "[t]he very essence of judicial review is to determine whether an agency complies with its own regulations and procedures so that there may be uniformity in decisions. *Moore v. Colvin*, No. 1:12-cv-00739-MJD-JMS, 2013 WL 4584618, *5 (S.D. Ind. Aug. 28, 2013), *citing Sierra Club v. Martin*, 168 F.3d 1, 4 (11th Cir. 1999) ("courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself.").

Here, the ALJ's decision does not provide any indication of whether Keller's symptoms were considered under the POMS. The facts are substantially similar to the example the POMS provides. In the RFC assessment, the ALJ alludes to relying on the state agency physicians as "they are well-versed in the assessment of functionality as it pertains to the disability provisions

of the Social Security Act." [R. at 19.] However, it is unclear whether this POMS provision was in effect at the time the state agency physicians gave their opinion. While it is error for the ALJ to make a finding on medical equivalency without a medical opinion, *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 696 (N.D. Ill. 2003), *citing Wilder v. Chater*, 64 F.3d 355, 337-38 (7th Cir. 1995), here, there appears to be an amendment to the Social Security procedures that supersedes the medical opinion of record. Because the facts of the case so closely resemble the facts in the POMS, substantial evidence does not support the ALJ's step three determination and remand is appropriate.

**B.     RFC**

As this Court found error at step three, there is no need to consider the remaining issues. However, the Court will briefly address the RFC. In the RFC, the ALJ restricted Keller to "light work" which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); [R. at 16 & n.1]. However, there is nothing in the record to support such a limitation. While the ALJ acknowledges that Keller's impairment of migraine headaches is severe [R. at 14], the limitation(s), if any, should be proportional to the impairment and supported by the record. Therefore, on remand, if the ALJ's decision makes it beyond step three, the Court orders that the ALJ make a new RFC assessment. The new RFC assessment should thoroughly explain the weight accorded to the treating physicians, Keller's credibility, and the credibility of the lay opinions.

## VI.     Conclusion

For the reasons set forth above, substantial evidence does not support the ALJ's determination that Keller is not disabled and the Magistrate Judge recommends that the

11

Commissioner's decision be **REVERSED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 02/14/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Theodore F. Smith, Jr
THEODORE F. SMITH JR. PC
tsmith@tedsmithlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov